# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ALEXIS PALMA and
JONATHAN PALMA,

       Plaintiffs,

v.                                    Case No. 8:20-cv-251-T-KKM-JSS

SAFECO INSURANCE COMPANY
OF ILLINOIS, et al.

       Defendants.
_____/

## ORDER

Plaintiffs Alexis and Jonathan Palma move to exclude two expert witnesses for Defendant Safeco Insurance: Robert Hernandez and Stephen Durham. (Docs. 28, 29). The Palmas argue that the Court should exclude their testimony for two reasons. First, they argue that Safeco failed to timely disclose Hernandez's and Durham's expert reports. Second, they argue that Hernandez and Durham fail to qualify as experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Safeco opposes the Palmas' motions. (Docs. 34, 35).

Safeco's failure to timely disclose Hernandez's and Durham's expert reports is harmless because the Palmas could depose each witness before trial. Hernandez's expert report sufficiently meets the *Daubert* standard, and any issue that the Palmas have about his methodology is best dealt with during cross-examination. So the Palmas' motion to exclude Hernandez will be **DENIED**.

Durham's opinion on Mrs. Palma's lost earning capacity also meets the *Daubert* standard. But Durham is not qualified to testify about Mrs. Palma's future medical costs and life care plan. As a result, the Palmas' motion to exclude Durham will be **GRANTED-IN-PART** and **DENIED-IN-PART**.

### Late Expert Disclosures

The Palmas argue that the Court should exclude Hernandez's and Durham's expert testimony because Safeco failed to timely disclose the expert reports of Hernandez and Durham before the deadline on November 20, 2020. (Doc. 28 at 3–4; Doc. 29 at 3–5). Safeco concedes that it failed to provide Hernandez's and Durham's expert reports until December 2020, (Doc. 34 at 2; Doc. 35 at 2), but argues it timely disclosed Hernandez and Durham as experts before the deadline. (Doc. 34 at 1; Doc. 35 at 1). As a result, Safeco concludes that the Palmas suffered no prejudice from the late expert reports because they were still able to review the reports with ample time before deposing Hernandez and Durham. (Doc. 34 at 2; Doc. 35 at 2).

A party must disclose to the other party any expert witness expected to testify at trial by the deadline imposed by the court. *See* Fed. R. Civ. P. 26(a)(2)(A). Unless otherwise stipulated or ordered by the court, a party's expert disclosure must include any written report prepared and signed by that expert. Fed. R. Civ. P. 26(a)(2)(B).

Safeco acknowledges that it failed to disclose its experts' reports by the November 20, 2020 deadline. (*See* Doc. 34-1). No court order excused Safeco from doing so. Nor did the parties stipulate otherwise. As a result, Safeco's disclosure of

Durham's and Hernandez's expert reports (which Safeco provided to the Palmas on December 9 and 18, 2020, respectively) were late.

If a party fails to timely disclose an expert report, that party is not allowed to use that information or witness at trial unless the party's failure to timely disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The failure to timely disclose an expert report is harmless when no prejudice exists to the party entitled to the report. *Chapple v. Alabama*, 174 F.R.D. 698, 701 (M.D. Ala. 1997). A party is prejudiced by untimely expert disclosures when that party cannot adequately prepare its case by deposing the expert witnesses. *See Greater Hall Temple Church of God v. S. Mut. Church Ins. Co.*, 820 F. App'x 915, 920 (11th Cir. 2020); *Morrison v. Mann*, 244 F.R.D. 668, 673 (N.D. Ga. 2007) (Carnes, J.).

Although Safeco puts forth no argument that its failure to timely disclose Hernandez's and Durham's expert reports was substantially justified, Safeco's failure is harmless. The Palmas suffered no prejudice from Safeco's late disclosures because the Palmas deposed Hernandez and Durham with their expert reports in hand. And the Palmas never argue that they were unable to adequately depose Hernandez and Durham because of Safeco's late disclosures. As a result, Safeco's failure to timely disclose Hernandez's and Durham's expert reports is harmless (but not condoned).

## Experts under *Daubert*

The Palmas argue that the Court should exclude Hernandez's and Durham's expert testimony under *Daubert*. For Hernandez, they argue that (1) he is not qualified

3

to testify as a vocational expert (Doc. 28 at 6), (2) he applies the wrong methodology for calculating past earning capacity (*id.* at 7), and (3) his testimony will not assist the trier of fact (*id.* at 8). For Durham, they argue that (1) he applies the wrong methodology in calculating Mrs. Palma's loss of future earning capacity (Doc. 29 at 10–13), (2) he is not a life care planner and thus unqualified to opine on Mrs. Palma's future medical costs or life care plan (*id.* at 13–14), and (3) his testimony on Mrs. Palma's lost earning capacity is unhelpful because it is duplicative of Hernandez's testimony (*id.* at 14).

### *Daubert* Standard

Federal Rule of Evidence 702 governs expert testimony. A court should admit expert testimony if the proponent of that testimony establishes the following:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted).

An expert can be qualified to testify about certain matters based on his scientific training, education, or experience in the field. *See United States v. Frazier*, 387 F.3d 1244, 1260–61 (11th Cir. 2004).

To determine whether an expert's methodology is reliable, courts consider:

> (1) whether the expert's theory can be and has been tested; (2)

4

> whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Id.* at 1262 (citation omitted). Courts should consider these four factors, which come from *Daubert*, along with others tailored to the facts of the case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The *Daubert* factors apply to testimony based on scientific knowledge and testimony based on technical or other specialized knowledge under Rule 702. *Id.* at 141–42.

Expert testimony generally helps the trier of fact to understand evidence or decide a fact at issue if the testimony "concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. Expert testimony will not help the trier of fact if it "offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63.

Simply because expert testimony meets the *Daubert* standard does not mean that testimony is automatically admitted. *See id.* at 1263. Instead, the court must still consider whether that expert testimony satisfies the other Federal Rules of Evidence. *See id.*

### Robert Hernandez

Safeco disclosed Hernandez as an expert in forensic accounting. (Doc. 34-1). His proffered testimony deals with Alexis Palma's (an attorney) lost earnings as a result of the auto accident at the heart of this dispute. (*See* Doc. 28-5). Hernandez's curriculum vitae shows that he has a bachelor's degree in "Business Administration / Accounting

Major" and has a master's degree in accounting. (Doc. 34-5). He is a member of multiple accounting organizations and associations. (*Id.*). And he has spent over sixteen years "specializing in investigative accounting services to the insurance industry and legal profession." (*Id.*). Those accounting services include work relevant to "lost earnings" and providing expert testimony in multiple industries, including "CPA / Law Firms." (*Id.*). Hernandez's resume—that is, his education, training, and experience—sufficiently shows that he is qualified to testify about Alexis Palma's lost earnings.

The Palmas argue that Hernandez's methodology for calculating Alexis Palma's lost earnings is unreliable. (Doc. 28 at 7). According to the Palmas, a reliable methodology for calculating lost earnings looks at "the average of a person's past earnings as well as the open market for people with similar qualifications and skill level." (*Id.*). The Palmas argue that Hernandez failed to consider that Alexis Palma's pre-accident earning capacity varied "depending on whether she was working as an associate for a firm or whether she owned her own firm, and whether she was having children and low back surgeries or whether she was able to work the entire year." (*Id.*).

The Palmas' attack on the reliability of Hernandez's methodology fails to preclude his testimony entirely under Rule 702, but they may cross-examine him about it. In preparing his calculation of Alexis Palma's lost earnings, Hernandez considered, among other things, Jonathan and Alexis Palmas' deposition transcripts, the Palmas' expert reports on Alexis Palma's lost earnings, and the Palmas' vocational expert reports. (Doc. 28-5 at 2). It is normal for one expert to partially rely on another expert's

6

report to form his or her own opinion. *See generally United States v. Winston*, 372 F. App'x 17, 19–20 (11th Cir. 2010). What is more, Hernandez considered Alexis Palma's personal issues that affected her earnings, including the birth of her first child and her other medical issues. (Doc. 28-5 at 11). There is nothing inherently unreliable about using the two years preceding the auto accident and an annualized figure for the year of the accident as the base period for determining Alexis Palma's lost earnings—which Hernandez did in his report. (*Id.*). Perhaps Hernandez's methodology applied to those years is prone to producing a lower lost earnings amount compared to the Palmas' preferred years and underlying data, but those kinds of arguments provide good fodder for cross-examination not exclusion. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").[1]

Turning to the usefulness of Hernandez's testimony, the Palmas argue that his testimony would confuse the jury. (Doc. 28 at 8). According to them, "[t]he jury cannot take Mrs. Palma's three-year pre-accident earning capacity, which include 2016 where

---

[1] *See also Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) ("Quiet does not argue that it is improper to conduct a CFD study using the sorts of aerodynamic data that Frank employed, but rather that the specific numbers that Frank used were wrong. Thus, the alleged flaws in Frank's analysis are of a character that impugn the accuracy of his results, not the general scientific validity of his methods."); *Vincent v. Am. Honda Motor Co.*, No. CV 108-067, 2010 WL 11537725, at *3 (S.D. Ga. Feb. 4, 2010) (Bowen, J.) ("Albeit minimal, Dr. Coston had a factual basis for his assumptions [about the plaintiff's past earnings], and the purported deficiencies in Dr. Coston's opinion impact the weight and sufficiency of his opinion and testimony rather than its admissibility.").

she was recovering from surgeries, 2017 where she gave birth to her second child, and 2018 where she was involved in this motor vehicle crash in June and use that average to determine Mrs. Palma's [wage] loss." (*Id.*).

But this argument simply revisits the reliability of Hernandez's methodology; thus it provides no persuasive value in determining whether Hernandez's testimony will assist the jury. *See Frazier*, 387 F.3d at 1260 ("While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them."). Because the mathematical calculations for determining Alexis Palma's lost earnings as a result of the auto accident is beyond the understanding of the average lay person, the Court finds that Hernandez's testimony would help the jury decide a fact at issue: Alexis Palma's damages. The Palmas' motion to exclude Hernandez as an expert witness is denied.

### Stephen Durham

The Palmas argue that the Court should exclude Durham's opinion because he is "not qualified to testify under the *Daubert* standard regarding the costs of medical care in [their expert's report]." (Doc. 29 at 8).

To begin, although the Court finds Durham qualified as an expert economist (*see* Doc. 35-5), his testimony on Alexis Palma's lost earning capacity would be duplicative of Hernandez's expert testimony on that same issue. *See* Fed. R. Evid. 403; *Frazier*, 387 F.3d at 1263 ("Exclusion under Rule 403 is appropriate if . . . the expert testimony is cumulative or needlessly time consuming."). As a result, Safeco may proffer one expert

8

to opine on the issue of lost earning capacity.

The Palmas also argue that Durham's methodology for forming his opinion on Mrs. Palma's lost future earning capacity is unreliable because he deducted Social Security taxes from what would be Mrs. Palma's future wages. (Doc. 29 at 10–12). According to the Palmas, caselaw holds that deducting tax liability from future earnings is improper. (*Id.* at 11–12) (citing *St. Johns River Terminal Co. v. Laden*, 190 So. 2d 40 (Fla. Dist. Ct. App. 1966)). Safeco put forth no response to this argument except to the extent Safeco generally argues that Durham is qualified under *Daubert* to opine on lost earnings. (*See* Doc. 35).

Despite the Palmas' argument to the contrary, caselaw is not clear on whether an expert may deduct tax liability from projected lost earnings. *Laden*, on which the Palmas solely rely, deals with jury instructions on the issue of tax liability. 190 So. 2d at 41–42. And subsequent caselaw also focuses on jury instructions—not expert opinions. *See Flanigan v. Burlington N. Inc.*, 632 F.2d 880, 886–87 (8th Cir. 1980); *Good Samaritan Hosp. Ass'n v. Saylor*, 495 So. 2d 782, 783 (Fla. Dist. Ct. App. 1986). Because the Palmas failed to cite caselaw holding that an expert may not deduct social security taxes from projected lost earnings, the Court finds that the issue is best dealt with through cross-examination of Durham, if Safeco chooses Durham as its expert on lost earnings. *See Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-595-T-24TGW, 2007 WL 3231780, at *3–4 (M.D. Fla. Oct. 30, 2007) (finding cross-examination and closing argument the best way to attack expert opinion that considered tax liability when opining on lost earning

9

capacity).

Turning to Durham's opinion about Alexis Palma's future medical costs and life care plan, the Court finds that matter falls outside Durham's area of expertise. Safeco disclosed Durham as an expert in forensic economics. (Doc. 34-1 at 1–2). And Durham's resume shows that his experience has been in evaluating economic and financial losses. (Doc. 35-5). But, in arriving at his conclusion on Alexis Palma's future medical costs and life care plan, Durham reviewed the vocational assessment prepared by Gerri Pennachio, a vocational rehabilitation consultant and certified life care planner. (Doc. 29-1 at 22; Doc. 29-7 at 1). Durham also prepared a valuation of a life care plan prepared by Dr. Michael Shahnasarian. (Doc. 35-4 at 1).

Life care plans and vocational assessments are areas of expertise distinct from forensic economics. *See, e.g.*, *M.D.P. v. Middleton*, 925 F. Supp. 2d 1272, 1275 (M.D. Ala. 2013) (Albritton, J.) ("[T]his court first notes that courts routinely recognize that life care planners may be qualified to provide testimony as to future care of injured patients, and the cost of such care."); *Fox v. Safeco Ins. Co. of Ill.*, No. 8:16-CV-2665-T-23JSS, 2018 WL 792093, at *6 (M.D. Fla. Jan. 23, 2018) (Sneed, Mag. J.) (recommending that the district court deny motion to exclude Michael Shahnasarian as a vocational rehabilitation expert), *adopted in* 2018 WL 783719 (Merryday, J.); *Wilson v. City of St. Petersburg*, No. 19-CV-1868-T-60SPF, 2020 WL 8613257, at *1–3 (M.D. Fla. Dec. 23, 2020) (Barber, J.) (analyzing separately *Daubert* challenges to a forensic economist and a vocational evaluation (Gerri Pennachio)). Of course, an expert "may testify only about

matters within the scope of his or her expertise." *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1358 (S.D. Fla. 2015) (Altonaga, J.) (citing *City of Tuscaloosa*, 158 F.3d at 562).

Durham does not purport to be an expert in life care plans or vocational assessments, and Safeco's opposition to the motion likewise does not argue that he is an expert in this regard. As an economist, Durham may opine on the economic value of Dr. Shahnasarian's life care plan—a point the Palmas concede. (Doc. 29 at 6) ("The only non-cumulative testimony Dr. Durham could possibly provide is . . . his economic value of Dr. Shahnasarian's late life care plan."). But Durham is not qualified under *Daubert* to give an opinion on Alexis Palma's future medical costs or life care plans. Durham may provide testimony—assuming it is not wholly cumulative of other expert testimony—about future earning capacity and the economic value of Dr. Shahnasarian's life care plan.[2] The Palmas' motion to exclude Durham from Safeco's witness list is granted in part.

## Conclusion

Although Safeco failed to timely disclose Hernandez's and Durham's expert reports to the Palmas, that failure is harmless because the Palmas were able to depose

---

[2] The difference between Durham's opinion on Pennachio's report and Shahnasarian's life care plan is that, for Shahnasarian's plan, Durham calculated the value of the life care plan. (*See* Doc. 35-4). For Pennachio's report, on the other hand, Durham looked for alternatives to Pennachio's recommended trainers and prescription medication. (*See* Doc. 29-7 at 3–4). Determining Mrs. Palma's treatment and medication is not a matter on which Durham is qualified to opine.

11

both experts. Hernandez is qualified to testify about Alexis Palma's lost earning capacity; Hernandez's methodology is sufficiently reliable; and his testimony will help the jury decide the issue of Alexis Palma's alleged damages. But Durham is not qualified to testify about Alexis Palma's future medical costs and life care plan. Durham's testimony will be limited to the economic value of Shahnasarian's life care plan and Mrs. Palma's lost earning capacity assuming it is not duplicative of other expert testimony. Therefore, the following is **ORDERED**:

1. The Palmas' motion to exclude Robert Hernandez from Safeco's witness list (Doc. 28) is **DENIED**.

2. The Palmas' motion to exclude Stephen Durham from Safeco's witness list (Doc. 29) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**ORDERED** in Tampa, Florida, on April 14, 2021.

Kathryn Kimball Mizelle
United States District Judge